Curia, per Johnston, J.
The liability of the defendants to account for the interest on the money, arid for the increase of live stock, and for the articles substituted in the room of those which had perished, and which were bequeathed to Robert Smyth, Jun., under the residuary clause of the will, is so utterly untenable, that it was not seriously insisted on in the argument. The leading questions, arising out of the case stated in the brief, and to which I shall principally direct my attention, are involved in the inquiry, as to the extent and nature of the interest which Robert Smyth, Jun., took in the one third part of the personal estate, allotted and distributed to him, under the residuary clause of this will, and to what extent the defendants, representing his interest, are bound to account for it. It consisted of articles,, which admit of the following classification, viz: 1st. of money, 2nd. of *462 things qum ipso usu consumantur, as corn, oats, pork, brandy, <fcc. 3d. of things wearing out in the use; which may again be divided into : 1st. Things that will be presumed to have perished, or be entirely worn out in the life; as horses, cattle, hogs, and plantation tools. 2nd. Of things that will, be presumed to endure for life, though deteriorated in the use ; as plate, or othei- permanent articles of furniture.
The testator bequeaths to his son, Robert Smyth, Jr., by a general residuary clause, a property composed of all this variety of materials, with a proviso, that if he should die, without leaving lawful issue, it should go over to the complainants. He died without issue, and hence the questions that have been raised. The old rule was, that there could be no limitation over, of a personal chattel, after a life estate; but this was founded on trite and illiberal notions, which readily gave way to more enlarged and liberal views of the subject; and it is, now, no longer a question, that a personal chattel may be limited over, after a bequest for life; and I may add, without regard to description, quantity or quality. I know that an exception to the general rule prevails, in regard to things, qum ipso usu consumantur, but that is founded on the manner of the bequest, and not on the incapacity of the testator to limit over, even these articles. Let us suppose, that A. bequeaths to his friend, B. specifically, inter alia, one dozen of London, Particular Madeira, with a limitation over, after his death, to C. Now here, the limitation over is absolutely inconsistent with the gift, for it is impossible that there can be any remainder, after the only use, which B., the tenant for life, could have made of it. But if he hada'dded in the bequest, “I know B. and C. cannot enjoy the use, and that B. shall sell it, and receive and enjoy the interest, arising from the value for his life, leaving the principal for the use of C. after his death,” I cannot conceive, why such a limitation should not prevail in regard to this article, as well as to any other of a perishable nature. It is, in this way, as capable of enjoyment, by the legatee for life, and the re-mainderman, as any other personal chattel. It is, in effect, money itself, which is neither consumed nor worn out in the use, but, on the contrary, more novel than the Phenix; *463 it Hot only renovates itself, but produces issue. It is not then the incapacity of the testator, to make any disposition of his chattels, of whatever they ■ consist, that creates ther difficulty, but in judging, from the expressions contained in his will, what he intended; so that all these questions are resolved into questions of intention. In the absence of any settled rule, applying to the particular case to be considered, they must, of necessity, be resolved by general rules, applied to the whole context of the will, consistent with reason and analogy. When we have well defined rules, founded in good sense and sound reasoning, we will, as a matter of course, prefer to follow these, although we may not, at once, be able to perceive the whole rationale, rather than speculate upon our own views, in a doubtful question, trusting that some future occasion will develope their soundness. It has been before shown, that the specific bequest of a chattel, consumable in the use, vests an absolute property in the first taker, for the reason before given, that without any other qualification, the first gift is inconsistent with the limitation over. The tenant for life, and the remainderman, cannot both have the use. This conclusion is indicated by the reason and nature of the thing, especially in those cases, where things of this nature are mixed up with things, less destructible; and the rules, established by adjudged cases, are decisive in relation to it. This case then, it will be perceived, turns upon the question, whether a different rule is to be applied to cases, where the bequest is, by a general residuary clause ,of articles of this description.
Let us, then, examine how far a course of reasoning, deduced from the nature and reason of things, will aid us in this enquiry; and let us suppose, by way of illustration, that the testator, having an only child, for whom alone, it was apparent, he was anxious to provide, and that, by one general sweeping clause, he gave to him his whole estate, which turned out to consist of lands, slaves, live-stock, implements of husbandry, and of household furniture, provisions, <&c.; but in the event of his death without issue living, all should go over to another. Now, if I were left without any other clue to his intention, I am permitted to judge from my own knowledge of the motives to human *464 actions. I should conclude, that the testator intended that his child, the devisee, or legatee, should enjoy this legacy as a whole, and that he intended that only so milch as was left, after he had enjoyed it, should go over to the remain-derman, without any accountability on the part of the child, further than that he should use the whole, in an husbandman-like manner. In such a case, the use of the destructible articles would be necessary to the enjoyment of the whole, and by their unity, they are identified with those that are indestructible. But let us take the case under, consideration, to illustrate the opposite view. Here, the testator had provided most amply for his son, Robert Smyth, jr., by a specific bequest of lands and negroes, things capable of use and enjoyment, of themselves, and so he had done for all others for whom it was his duty and inclination to provide ; but knowing that there were many little odd ends which it would be difficult, if not impracticable, to enumerate; he sums them all up in the expression of “the remainder of my personal estate,” and directs its distribution ; and' in the event of .the death of his son, without leaving issue, he directs that it shall go over to the wards of the plaintiff. The question, then, arises, what did he intend with regard to this limitation over, which consisted of a commixture of things, in some degree indestructible, of those that would be deteriorated, and others consumable in the use? . Why, I should say that there was nothing inconsistent with the limitation over, and the bequest for life; for, without the addition of something else, they might be useless, even to the tenant for life. What benefit would he derive from a stock of provisions which must necessarily perish before he could use them himself? It cannot, then, be concluded, that the testator intended they should be used only in this way. By converting such articles into money, the tenant for life might have all the enjoyment of which the thing was capable, preserving the principal for the remainderman, and thus fully effectuating the intention of the testator. The distinction between a specific bequest of a chattel, consumable in the use, and a bequest in a general residuary clause, consists, according to this course of reasoning, in the inconsistency of a limitation over, in the first case, and the consistency and practi- *465 ©ability in tlie last. Thus much for my own reasoning. Let us now examine whether this conclusion is supported by the rules drawn from decided cases; and of these, I shall take the most prominent only; and I shall begin with the case of Howe vs. Earl of Dartmouth, 7 Ves. 137. There, the general rule, that when personal property is generally, and not specifically bequeathed for life, with a remainder over, it shall be funded, and the income of it, only, enjoyed by the tenant for life, is distinctly and fully maintained and enforced. There, the estate consisted, in part, of bank stock, and long and short annuities; but it is evident, that other articles, which are not enumerated, were also included in it. In Fearnes vs Young, 9 Ves. 551, Lord Eldon says,'that in limitations over, of personal estate, not specifically given, and wearing out in interest, or of an interest at present saleable, but, in point of enjoyment, future, the rule is, that the whole shall be converted into money, the interest of which is to be enjoyed by the tenant for life, reserving the principal for him in remainder. There, the estate consisted, in part, of the interest of the tesator in a mercantile concern. These cases proceeded upon the rule adopted by the Court, in Porter vs. Tournay, 3 Ves. 310, where, although there it seems to be a matter of doubt, as to the correct mode of proceeding in cases thus situated, an estate, consisting of carriages and horses, furniture and live-stock, which had, according to a note of the Reporter, been sold, and, I presume, invested. In Randal vs. Russell, 3 Mer. 190, the Master of the Rolls, Sir Win. Grant, says, decidedly, that personal property, included in a residuary bequest for life, should be sold, and the interest only, enjoyed by the tenant for life, and that, too, in reference to a bequest of a personal estate, consisting of household furniture, plate, linens, liquors and provisions. In Walcott vs. Cady, 5 J. C. R. 334, Chancellor Kent ruled, that the remainderman, under a residuary bequest, was entitled to an inventory of the property bequeathed, evidently with a view to the liability of the representatives of the tenant for life on the termination of his estate. In all my researches on this subject, I have not been able to find the principle of these decisions in any manner called in question, or controverted, in any book, case, or record ; as au- *466 thority, they are, to a certain degree, binding; and, as founded in reason and justice, they are imperative. It only remains, then, that I should make the application to the case under consideration. 1st; with respect to money, it is very clear that the tenant for life is only entitled to the use, or interest, and must account to the remainderman for the principal only. 2d. He must account to the re-mainderman for the value of things necessarily consumable in the use, as corn, pork, oats, brandy, (fee. 3d. He is bound, too, I think, for things necessarily wearing out in the use, and which will be presumed to have perished during the life estate, as horses, cattle, hogs, implements of husbandry, (fee., for the remainderman is not bound to risk their destruction, when the tenant for life may enjoy them, consistently with the intention of 'the testator, without breaking in upon the capital, by converting them into money. 4th. With respect to articles less destructible, and which may be well supposed to endure for the life estate, and be of value to the remainderman, as plate, or other lasting articles of furniture, (fee., the remainderman is bound to accept what remains of them, notwithstanding the abrasion from time; for the use for life is not inconsistent with the limitation over, but that the tenant for life is bound to account for those that have been lost, or destroyed by negligence. 5th. This view precludes the idea, that he would be bound to account for the natural increase of stock, or for articles substituted in the place of such as were consumable, or perishable. It is, therefore, ordered and decreed, that an account be stated between these parties, conformably to the principles of this decree, and that the decree of the Chancellor, so far as it conflicts with it, be reversed.
DAVID JOHNSON.
Per Nott, J.
In this case, the testator, after having made several devises and bequests, directs the residue of his property to be divided among the several persons named in his will. Among the articles constituting the residue, are such as are consumable in their use, or wearing away, and wasting by the attrition of time, such as corn, wheat, fodder and bacon, as also, stock of cattle, hogs, horses, (fee, Consumable, or perishable articles, are *467 of two classes. 1st, those which are necessarily destroyed in their use, such as the corn, hay, (fee., and 2d, those which are not so much so, as being productive, and the capital kept up by the increase, such as stock of horses, cattle, (fee. Now, the question is, whether such property can be limited over,'after a life estate, or whether a gift for life vests an absolute estate in the first legatee; and if it can be limited over, in what manner can the limitation be made to take effect! It might bé supposed, that a distinction could be made between the two classes, which I have noticed; and. by .the civil law, the line seems to be pretty distinctly drawn. Every thing, of whatsoever nature it may be, is capable of a limitation over; or rather, the value of the thing - may be limited, though the thing itself may be consumed. The usufruct of things which are consumed in the use, says’ Domat, carries along with it the property of them, since one cannot use them but by consuming them. But the usufructuary is distinguished from the proprietor, in that he is obliged, after the usufruct is expired, to restore, according as his title obliges him, either an equal quantity of the same kind, with that which he received, or the value of the things at the time he received them. And in the text, wine and oil are mentioned as illustrative of the rule, 1 Dom. 190. If the property consist of articles, which are not immediately consumed by the use, but which become impaired by time, and finally destroyed, such as furniture, curtains, mules and horses, not capable of increasing, the usufructuary is bound only to deliver them over in the order they may happen to be at the time of the termination of the particular estate; and if one happen to die, or be destroyed, without his fault, he is not liable to make it good; do. do. , If the gift, or legacy consist of a herd,, or flock, the usufructuary is entitled to the increase, but must still keep up the number for the person in remainder, do. 189, 190. But those rules of the civil law have never been adopted as a part of the common law. By tlie ancient common law, personal property was incapable of being limited over. A gift for a day was considered as a gift forever. The law, however, has undergone a change in that respect. But still, Mr. Mad-dock says, if there is a specific gift for life, of things, quee *468 ipso usu consumanlur, such as cora and hay, it operates as a gift of the property, and there cannot he a limitation over, after a life estate in such articles. If included in a residuary bequest for life, they must then be sold, and the interest enjoyed by the tenant for life. And the distinction appears to me to be a reasonable one. If a person should give a demijohn of wine, or a hundred bushels of corn, it would be presumed to be for immediate use and consumption, and a limitation over would be inconsistent with tire nature of the gift. But where it consists of the residue of an estate, no such inference would be drawn from it, though that residue might consist partly of consumable articles. I do not consider it as depending upon the employment of the word, residue. If a person should give a hundred bushels of corn to one, and a hundred to another, and the residue to a third, the latter would be equally specific with the former. A residuary bequest is that which consists of the residue of an estate, and not of a particular article. It seems now to have become a general rule in the English Courts, that when personal property is given to one, for life, with limitation over, if it be of such a nature as to accumulate in the hands of the tenant for life, to the destruction of the interest of the person in remainder, or to accumulate for the remainderman, without any benefit to the tenant for life, to put it in such a shape that each shall have the enjoyment, according to the intention of the testator; and that can only be effected by selling the property, and permitting the tenant for life to receive the interest, and let the capital go over to the person in remainder. See the observations of Lord Eldon, in the case of Howe vs. the Earl of Dartmouth and Countess of Aylesbury, 7 Ves. 137; the marginal note is — general rule, that where personal property is bequeathed for life, with remainder over, and not specifically, it is to be converted into three per cents, subject, in the case of real security, to an inquiry, whether it will be for the benefit of all parties; and the tenant for life is entitled only on that principle. In the case of Fearns vs Young, 9 Ves. 549, in is said, as to personal estate, between tenant for life and it remainder, the subject being an interest wearing out, or capable of immediate sale, though future in enjoyment, *469 shall be valued, and the person entitled for life shall receive interest upon the amount. Indeed, I do not see how.any other rule can be adopted. The rule for the construction of wills is, that every word shall take effect.- And how else can a will have effect, when perishable property is given for life, with a limitation over, but by giving the interest of the value to the tenant for life, and the principal to the .person in remainder! The principle is distinctly recognized in the case of Randall vs. Russell, 3 Meriv. 190. The rule is there laid down in the following words: “ A specific bequest for life of things, quee ipso usu conswnaniur, is a gift of the property, and there can be no limitation over, after a life interest in such articles; but if included in a residuary bequest for life, they must be sold, and the interest enjoyed by the tenant for life. There was no order for the sale of the property in that case; but it was because the property was not known, and it was referred to the Master, to investigate the subject, and to report thereon, preparatory to an order of sale. Were it not for the purpose of ordering a sale, a reference would have been unnecessary. There is another view of the subject which deserves consideration, and which is somewhat peculiar to the situation of this country. Lands are sometimes given to one, for life, together with the slaves, stock of horses, • cattle, plantation tools, and provisions, with a limitation over. In such a case, the perishable articles cannot be considered as belonging, absolutely, to the tenant for life, neither can they be sold, because they are necessary for the preservation of the estate. The tenant for life must, therefore, be considered as a trustee for the remainderman, and must preserve the estate, with all its appurtenances, in the situation in which he received it. He may, therefore, be required to give an inventory of the property, or security for its preservation, according to circumstances. The tenant for life will be entitled to the increase of the stock, and the rents and profits of the land; but he must keep up the stock of cattle, horses, provisions, and implements of husbandry, in the condition in which he received them ; for, although some of the articles may be consumable in their use, and others are wearing out by the attrition of time, yet, when taken all together, being reproduc *470 tive, the estate must be made to keep up its own repairs. I have not the decree, nor any of the papers in this case, before me, and cannot, therefore, see the direct application of the opinion which I have expressed to the several parts of the case. But I am of opinion, the decree of the Chancellor ought to be so modified as to conform to the principles herein laid down.
Per Colcock J.
In this case, I shall decide only ■ the questions which are submitted by the brief, without taking any notice of the other parts of the case, which are considered as settled. The grounds taken by the complainant and defendant do, in fact, render it necessary for the Court to consider the subject, in reference to all the articles left to the deceased, R. Smyth, Jr. and to determine for which of them the executors of the deceased’s, mother are bound to account. After an attentive examination of the authorities, I have come to the conclusion that there is not so much conflict among them as the counsel appeared to suppose. In fact, where it is a question of intention, it must depend so much on circumstances that there will, necessarily, be occasional departures and exceptions from those general rules which seem to be acknowledged by all. I begin with those things which are consumable in the use; and, as a general rule, it is clear that they do not go over to the remainderman. This would seem to be so plain as to require no obser. It is not to be supposed that a testator means that the articles of first necessity, of daily consumption, should be kept for the person who has the contingent interest. How, in such a case as the present, are the negroes to be fed'? Can it be imagined that this testator meant that the corn, bacon, and brandy should be sold, and the money put to interest. I would as readily believe that it was his intention that the clothes of the negoes and the implements of husbandry should have been sold, or an inventory taken. Whenever this is intended, it is expressed, or clearly pointed out by the condition of the parties. I can well imagine a case in which, articles, which are consumable in the use, may be required to be sold for the benefit of the remainderman: as if, for instance, a huckster, who deals in such articles, should leave his whole stock to one for life, with remainder to another, in *471 such a case, it would not be expected that he intended the article’s to be used by the tenant for life, for they would perish before he could consume them all, and thus be of no value, or use to either of the parties in interest. It would therefore, in such case, b.e proper to order a sale, and to permit the tenant for life to take the interest, and on his death the capital would go over. So, likewise, I should say of the implements of husbandry, (when the land and nergroes are left,) they are not to be accounted for. In the case of Gillespie vs. Miller. 5 J. C. R. 22, the Chancellor says “a gift for life of a chattel is a gift of the usufruct only, and the only exception to the rule seems to be in the case of such articles-as corn, hay and so forth, of which the use consists in the consumption,” and refers to the case of Randall vs. Russell, 3 Meriv: 190; and sp in the case of Wescott vs. Cade, same authority, 346, he recognises, the case of Randall vs. Russell, and says that the Master of the Rolls observed upon that case, that originally, by the English law, there could be no limitations of a chattel, but a gift for life carried the absolute interest. There, a distinction was taken between the use and .the property. The use might be given to one for life, and the property to another. A gift for life of a chattel was now construed to-be a gift of the usufruct only. He referred to what Lord. Alvanly had said, in Porter vs. Townley, 3 Ves. 311; that there had been a great doubt what a person, having a limited use of articles (as corn, hay &c., of which the use-consists in the consumption,) must do; and he, the Chancellor, Lord Alvanly, conceived that a-gift for life, if specific, of things quae ipso usu consumantur, was a gift of the property, and that there could not be a limitation over, after a life interest in such articles. But it is said that there is a distinction between .a specific gift of articles, the use of which consists in the consumption, and a gift of them in a residuary clause; that in the first case it is admitted they are not to be accounted for by the tenant for life. But in. the latter they are not intended for his benefit alone, and therefore, are to be sold and the interest to be enjoyed, during his life, and the principal to go over at his death. In the first place, I deny that any such decision was ever made, though I admit that such dicta are to be found. *472 And in the second place, if such a decision could he found, I should not he disposed to subscribe to its authority, though I should like to see the reasoning on which it would be attempted to support it. Where there is no doubt of the intention of the testator to give the thing; it is admitted on all hands, that it depends on the nature of it, whether the tenant for life is to be answerable over, to the remainderman, for it. Now, if it depends on the nature of the article, how can the manner, or mode of giving it affect the question'? A testator gives to one of his sons (among other things,) fifty bushels of corn; itis admitted he means him to use it. He gives to two others the rest and residue of his property, among which, there are one hundred bushels of corn, so that each takes fifty bushels: the estate is limited over; can any reason be given, why it should be determined that the first should eat his corn, that would not apply to the other two. The nature of the article is not changed by the mode of giving, and I cannot see any thing in the mode of giving to create a difference in the intention of the testator, as to the sons. Each is to get 50 bushels of corn; why not the latter to use that which is left to him, as well as the former. I will, however, briefly review the cases by which the doctrine is said to be supported. The first is the case of Randall vs. Russell, 3 Meriv. 190, before referred to, and in which the doctrine is used. But the Chancellor, afterwards, in the next sentence says, that when the use and the property can have no separate existence, it should seem that the old rule must still prevail, and a limitation over, after a life interest, must be held to be ineffectual. Now, this applies directly to the nature of the property and consequently operates as much on that contained in the residuary clause, as on that specifically given; and he concludes with ordering an inquiry of what the crop and stock consisted. But it will be remarked, that when the Chancellor attempts the distinction between the cases, where things consumable in the use are specifically given, and where they are left in a residuary clause, he is speaking of Porter vs. Townley, although he does not expressly say so. He, no doubt, refers to that case, when he says in the latter case *473 they must be sold; but on an examination of the case, it affords no authority for the dictum. The question was, in that case, what the tenant for life took under the will. The words were; that Jane Worthington was to have the use of the house I now live in, with all the furniture and stock of carriages and horses and other live and dead stock, during her life, <fec., the residue to his adopted son. It was decided, that books and wine did not pass: but (he adds) this must never be quoted as a governing case, because it does not determine what “live and dead stock" may mean, not coupled with other words. TI e opinion then concludes with the observation, “that there has been great doubt among the judges, what a person, having a limited use of such articles, must do.” Some learned judges have thought they must be sold, and that a person so entitled is to ' have only the interest of the money. This is a very rigid construction. Now, it is clear, that this observation does not apply to articles which are consumable in their use, for it must apply to those things which, he decided, belonged to Mrs. Worthington; but he did not sanction a sale oí any thing, and the things were not sold., at least by any order of the Court, as far as the case goes. The last cases are those in 5 Johns; in the first of which, Gillespie vs. Millen, Chancellor Kent clearly recognises the distinction as before shown, and the latter again recognises it; though he decides that the bonds and stock go over to those in remainder. But the whole subject is explained, by a reference to the cases in 7 Ves. 137, and 9 Ves. 550; in which it will be seen that the language is applied to stock, although general, such as personal property, things which consist of interest wearing out. Short annuities, for instance, are the particular articles most frequently referred to as subjects of sale, to be converted into three, or four per cent stock. And I should think that there never could be a doubt on this point, let the bequest be made in what form it may. The next articles to which our consideration is drawn, are the cattle, hogs, and sheep: and as to these, I find but one opinion. Flocks are to be used by the tenant for life in a husbandman-like manner. The rale of the civil law has been adopted, that the flock *474 is to be kept up, but the product used, Jus: 2 Lib. Lit: t, sec: 38. “He who has the usufruct of a flock ought (according to Julian) to preserve the original number, entire, by supplying the deficiency out of the young: in like manner, he ought to supply the place of dead vines, or trees; and cultivate and use the stock in all respects like a good and fair husbandman.” But where a testator gives a few sheep, or cattle, or hogs to one, and a few to another, I should not suppose he intended them to go over; the old rule would apply; it would be considered an absolute gift. It would seem by the decree that it was intended that the interest arising on the $4000, the proceeds of the crop, and cash which the testator left, should be accounted for, but this is in direct opposition to every rule which is' laid down on the subject, and, in effect, takes from the tenant for life all interest in the thing. If both principal and interest are to go over, what does he take'? He would be a mere steward, without even compensation for his services. I do not think that the executors are bound to account for the colt; for that is within the principle laid down in relation to cattle. If a stud of horses were left to a tenant for life, with remainder over, I should think he was bound to keep up, the original stock'and use the increase beyond what was necessary for this purpose; but not so. where a single mare is given, or a gelding which could not produce. But in this case I go further. The estate was given absolutely, to go over,, on an event that the father (the testator) could not have wished for. Now, I think he would be greatly surprised if he could hear learned gentlemen contending, that the representatives of his son should be accountable to the grand children, for those things which were consumable in the use, or were like to perish, or be deteriorated in. the use. There are reasons too, which should have their weight in support of my view of the case, which are in some degree peculiar to our law. It has been decided that the issue of slaves goes over to the re-mainderman; now, it seems to be somewhat more than rigid, under this state of things, to make the tenant for life answerable for the corn and peas which may be left on a plantation (which he is to hold for life, and his descend *475 ants, if he should have any, forever) for those in remainder, to whom those very negroes go. C. J. CQLCOCK.
Noble & Ward law, defendant’s solicitors.
Bowie & M’Craven, complainant’s solicitors.